CLARENCE E. McMANUS, Judge.
i statement of the case
On November 19, 1990, Plaintiff, Eddie Joseph (“Joseph”), was injured when the garbage truck on which he was riding as a “hopper” struck a utility pole, crushing him between the truck and the utility pole. The garbage truck was owned and operated by Fred Trosclair Garbage, Inc. The utility pole was owned and maintained by Entergy Louisiana, LLC and was located on Beech Street, a narrow, dead end street in St. John the Baptist Parish.
Joseph was on the rear platform of the garbage truck when the driver, Clifton Narcisse, backed the truck down Beech Street and into the utility pole. Because Beech St. is a dead end street and is narrow there is no space available to turn the garbage truck around. Therefore, the garbage truck must be backed down the street in order to pick up the garbage for the residents along the street. The utility pole on Beech St. is located eleven inches from the roadway.
Joseph originally filed suit on November 12, 1991 against St. John the Baptist Parish and each of the parish eouncilmen. Joseph later named Entergy as a defendant and alleged the utility pole was owned and in the custody of Entergy. 13Joseph alleged the utility pole was improperly placed and was the sole cause of the accident, therefore, Entergy was liable to him for damages pursuant to La. C.C. art. 2315 and art. 2317. Plaintiff alleged liability pursuant to these statutes, as they read prior to the enactment of the 1997 strict liability laws. Joseph contended the utility pole was improperly placed and its placement constituted an unreasonable risk upon users of the roadway making Entergy liable for the injuries to him.
Joseph’s claims against Entergy were heard by bench trial on March 29, 2006 *1036 before the Fortieth Judicial District Court. The matter was taken under advisement and the trial court issued a written judgment with reasons on February 2, 2007. The trial court found in favor of Entergy and dismissed all claims of Joseph.
In its reasons for judgment, the trial court applied La. R.S. 48:381.3 which provides the roads and streets, not a part of the highway system, should comply with the National Electrical Safety Code (“NESC”) regarding structure placement. The trial court further found that the guidelines of the American Association of State Highway and Transportation Officials (ASSHTO) are not applicable to this case because Beech St. is a parish road and not a state highway.
The trial court found the placement of the pole complies with the guidelines of the NESC since it was located 11 inches from the roadway and has been in that position since 1965 with no other reported accidents. Therefore, the trial court found the placement of the pole did not create an unreasonable risk of harm to the Joseph. Thus, his claim for liability under strict liability or negligence failed.
Joseph now appeals the trial court’s judgment arguing three assignments of error. First, Joseph argues, the trial court erred in applying La. R.S. 48:381.3 when considering whether the location of the utility pole presented an unreasonable risk |4of harm. Joseph argues since this statute does not apply, the trial court improperly applied the NESC to determine the duty of care owed by Entergy.
Second, Joseph argues the trial court erred in refusing to apply the AASHTO standards when considering whether the location of the utility pole presented an unreasonable risk of harm. Joseph contends that the AASHTO standards are applicable to this street, and according to these regulations, the pole was at least 18 inches too close to the roadway. Joseph argues under these standards, the pole presents an unreasonable risk of harm.
And third, plaintiff argues the trial court erred in disregarding evidence indicating that the location of the utility pole presented an unreasonable risk of harm.
In addition, plaintiff argues the trial court failed to consider some evidence presented, such as markings on the pole indicating it had been hit befoi’e and after the accident, markings on the fence, and movement of the fence across from the pole. Joseph argues this evidence indicates the accident was due to the narrow area at this section of the street. Also, the pole was located in the narrowest section of the street where the street curved, even though there were other locations that would have served Entergy’s utility needs.
In opposition, Entergy argues the AASHTO guidelines are not applicable to this case because they only apply to the Louisiana Department of Transportation and Development (“DOTD”) and state highway system. The utility pole in question was owned and maintained by Enter-gy, not the DOTD. Entergy also argues the accident was caused by the plaintiffs own negligence and the negligence of the driver of the garbage truck. Finally, En-tergy argues the trial court found that the NESC standards do apply in this case and, according to these standards, the pole was properly located in the public right of way with no previous problems.
For the reasons which follow, we affirm the trial court’s judgment in favor of En-tergy, dismissing all claims of Joseph.

DISCUSSION

In this suit against Entergy, Joseph claims the sole cause of the accident was Entergy’s improper placement of the utility pole on Beech St. Joseph further claims that since the accident occurred prior to *1037 1997, the 1997 revisions to the statutes regarding strict liability and negligence do not apply. We find the trial court correctly applied these statutes as written prior to the 1997 revisions. Therefore, in order for him to recover damages and prove the strict liability and negligence of Entergy, he must show the thing in question was in the custody of Entergy, the thing had a defect creating an unreasonable risk of harm, and the defective condition caused his injuries.
First, we find the utility pole was in the custody of Entergy. The record clearly shows that Entergy owned and maintained the utility pole. Therefore, we must further determine whether the pole created an unreasonable risk of harm. Joseph argues the pole creates an unreasonable risk of harm because its location failed to comply with the AASHTO guidelines. He presented the expert testimony of Robert Canfield, an expert in the field of traffic and safety engineering and roadway design. Canfield testified that the placement of the pole did not comply with AASHTO. As noted by the trial court, Canfield testified that the pole was in a bad location because it was less than twelve inches from the edge of the road, there was no curb to stop the vehicle, and the pole was near the curve in the road which practically led vehicles into the pole.
1 [¡Entergy argues the AASHTO guidelines are not applicable, and instead the NESC applies. Entergy argues the pole location complied with the NESC. Entergy argued the NESC applies based on La. R.S. 48:381.3, since the street was not part of the Louisiana DOTD.
Entergy also provided the testimony of an expert in the field of electrical utilities industiy standards and practices, Frederick Brooks. Brooks testified that the AASHTO guidelines are only to be used by the state and other highway departments. He further testified that the NESC applies and provides that supporting structures should be placed a sufficient distance from the roadway to avoid contact by vehicles where there are no curbs.
The utility pole in this case was owned and maintained by Entergy, a private utility company. This pole was not maintained by the DOTD or any other state highway department. La. R.S. 48:35 provides that DOTD shall adopt minimum safety standards and these standards shall correlate with the standards set forth by the ASSHTO. La. R.S. 48:35 and the AASHTO apply only to the DOTD and state highway departments and their duties to adopt minimum safety standards with respect to highway design, construction and maintenance. Williams v. City of Monroe, et al., 20,065 (La.App. 2 Cir. 7/3/95) 658 So.2d 820. Therefore, we agree with the trial court and find that the AASHTO guidelines do not apply to this utility pole.
We also find La. R.S. 48:381.3 is applicable to this case and provides that the NESC does apply. La. R.S. 48:381.3 provides, in part:
A. The duty of care owed to the motoring public by the owners and/or operators of public utility facilities, located adjacent to a highway, road, street, or bridge in this state shall be satisfied when:
(2) With respect to roads, streets, and bridges not part of the state highway system, the public utility facilities located in public right-of-way comply with the provisions of the applicable edition of the National Electrical Safety [ 7Code for structure placement relative to roadways, and to the extent they exist, with applicable ordinances of the parish or municipality that specify the location for public utility facilities in public right-of-way.
*1038 The NESC guidelines provide that supporting structures should be placed a sufficient distance from the roadway to avoid contact by vehicles where there are no curbs. Specifically, the NESC guidelines state:
Where there are curbs; supporting structures ... shall be located a sufficient distance from the street side of the curbs to avoid contact by ordinary vehicles using and located on the traveled way. In no case shall such distance be less than six (6) inches.
Where there are no curbs, supporting structures should be located a sufficient distance from the roadway to avoid contact by ordinary vehicles using and located on the traveled way.
The utility pole in this case was placed eleven inches away from the roadway. Therefore, we agree with the trial court and find that this utility pole was located a sufficient distance from the roadway, in accordance with the NESC. Therefore, we do not find this utility pole created an unreasonable risk of harm and Joseph’s claims against Entergy must fail.
Accordingly, we affirm the judgment of the trial court in favor of Entergy, dismissing all claims by Joseph.

AFFIRMED.